THE HONORABLE TIMOTHY W. DORE

David A. Gebben, Attorney At Law
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
Ph. (206) 357-8456
Fax (206) 357-8401

Chapter 7
Hearing Location: 700 Stewart Street, Room 8106
Seattle, WA 98101
HEARING DATE/TIME: JUNE 3, 2022, 9:30 A.M.
Response Date: May 27, 2022

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

In Re:

STAGING AND DESIGN NETWORK, INC.,

                                              Debtor.

NO.    22-10472-TWD

DECLARATION OF RONALD G. BROWN,
TRUSTEE IN SUPPORT OF HIS PROPOSED
SALE OF ASSETS FREE AND CLEAR OF
LIENS AND OTHER INTERESTS, AND FOR
APPROVAL OF HIS STIPULATION WITH
SECOND CENTURY VENTURES, LLC AND
OAKESDALE BUSINESS PARK, LLC

State of Washington        )
                           )    ss.
County of King             )

RONALD G. BROWN, TRUSTEE, under penalty of perjury, declares as follows:

1.     I am the duly appointed trustee in this Chapter 7 case. I am an individual of majority age,

and the statements contained herein are based on my personal knowledge.

2.     The debtor's Chapter 7 case was filed on 3-25-22. I reviewed the debtor's *Chapter 7*

*Schedules* and *Statement of Financial Affairs* and the Bankruptcy Rule 4002 documents that the debtor

provided to me. I also presided over the *Meeting of Creditors* in this case, which was held on 4-21-22.

DECLARATION OF RONALD G. BROWN, TRUSTEE IN
SUPPORT OF HIS PROPOSED SALE OF ASSETS FREE
AND CLEAR OF LIENS AND OTHER INTERESTS, ETC.          -1-

DAVID A. GEBBEN,
ATTORNEY AT LAW
1700 SEVENTH AVENUE, SUITE 2100
SEATTLE, WA 98101
TELEPHONE: (206) 357-8456
FACSIMILE: (206) 357-8401

3. The debtor listed some tangible assets on its *Chapter 7 Schedules*, including some inventory, equipment, etc. that was being stored in a warehouse at: 4051 Oakesdale Ave. SW, Suite C, Renton, WA 98057 ('the warehouse"). The debtor assigned a "book value" of $878,332.62 and a "current value" of $219,583.16 to those assets on its schedules.

4. The debtor indicated on its *Chapter 7 Schedules* that substantially all of the debtor's assets were subject to a UCC security interest held by Second Century Ventures, LLC ("SCV") for a debt with a balance due in the amount of $1,077,002.45 at the time of filing. I obtained some data on that debt, and some documentation on SCV's security interest, from counsel for SCV, including a copy of a *Loan And Security Agreement* dated 1-10-20, and some data showing that a debt in the amount of $1,131,460.29 was owed to SCV on the date of filing. I also obtained a copy of a *UCC Search Report* under the debtor's name in the State of Delaware, where the debtor was incorporated, to the best of my knowledge, and that report showed that SCV had filed a timely *UCC Financing Statement* in that state. A copy of the relevant *UCC Search Report* is attached hereto as "*Exhibit 1*." To the best of my knowledge, SCV holds a valid security interest in the assets that were listed on the debtor's schedules.

5. The debtor stated on its *Chapter 7 Schedules* that Oakesdale Business Park, LLC ("OBP") was the landlord for the warehouse space in Renton, and OBP has filed some documents with this Court showing that rent and other lease charges for that space were accruing at the rate of $79,715.83 at the time of filing. See the *Declaration of Joshua Shearer* dated 5-4-22 (Docket No. 33). To the best of my knowledge, OBP holds a potential administrative rent claim in this case based on that lease agreement.

6. Notwithstanding the fact that the debtor's assets were subject to a large secured debt and a large administrative rent claim, I felt that it might be possible to sell the debtor's assets on terms that would provide a benefit to the estate. So I met with an auctioneer at the warehouse space in Renton and I walked through the warehouse and examined the inventory and equipment in the warehouse at that time. I then received an *Auction Proposal* from the auctioneer that provided a "conservative" estimate of $221,200.00 for the value of the assets in the warehouse, and projected auction costs in the gross amount of $32,602.00, and showed a projected net return of $188,598.00 from the auction. A copy of the *Auction*

DECLARATION OF RONALD G. BROWN, TRUSTEE IN
SUPPORT OF HIS PROPOSED SALE OF ASSETS FREE
AND CLEAR OF LIENS AND OTHER INTERESTS, ETC.     -2-

**DAVID A. GEBBEN,**
**ATTORNEY AT LAW**
1700 SEVENTH AVENUE, SUITE 2100
SEATTLE, WA 98101
TELEPHONE: (206) 357-8456
FACSIMILE: (206) 357-8401

*Proposal* is attached hereto as "*Exhibit 2*," and a copy of the *Auctioneer Engagement Agreement* is attached hereto as "*Exhibit 3*." I also received a statement of interest in the inventory from a private party and I communicated with that party about that party's interest in the inventory; however, a firm offer to purchase the inventory was never submitted by that party.

7.      The debtor made reference on its *Chapter 7 Schedules* to a series of consignment agreements that the debtor entered into with various parties with respect to some of the inventory in the warehouse. A copy of an *Attachment to Schedule G* where the debtor listed the various parties who held consignment agreements is attached hereto as "*Exhibit 4*." I obtained a copy of a sample consignment agreement, entitled "*Investor-Owned Inventory*," which states that the inventory that is supplied by the consignor, or investor, may be sold at a consignment sale under certain circumstances. A copy of that sample consignment agreement, entitled "*Investor-Owned Inventory*," is attached hereto as "*Exhibit 5*." At the *Meeting of Creditors* a representative of the debtor indicated that approximately 30% of the inventory at the warehouse was subject to consignment agreements. When I visited the warehouse I saw stacks and stacks of furniture in all corners of the warehouse, and that furniture was not organized into consignment sections and non-consignment sections. There were tags on some, but not on all, of the furniture items, and some tags were lying on the floor and were not attached to any particular items. In my opinion, it would be very difficult for anyone to locate and identify a particular group of consignment items among all of the furniture items that are currently being stored at the warehouse.

8.      It is my understanding that the debtor entered into consignment agreements with agents and other parties who supplied furniture items to the debtor on a case by case basis, and different consignment agreement forms were used in different cases. Nevertheless, to the best of my knowledge, the various forms that were used by the debtor included provisions that provided for a sale of the inventory that was supplied by the consignor, or "investor," either by the debtor, or by another party, at a consignment sale that would take place under certain circumstances, for example if the furniture was no longer being used. In my opinion, all of the inventory that is presently being stored in the warehouse

DECLARATION OF RONALD G. BROWN, TRUSTEE IN
SUPPORT OF HIS PROPOSED SALE OF ASSETS FREE
AND CLEAR OF LIENS AND OTHER INTERESTS, ETC.      -3-

DAVID A. GEBBEN,
ATTORNEY AT LAW
1700 SEVENTH AVENUE, SUITE 2100
SEATTLE, WA 98101
TELEPHONE: (206) 357-8456
FACSIMILE: (206) 357-8401

should be sold, and the consignors or investors who supplied some of that inventory should file claims in the bankruptcy case if they want to receive a portion of the sale proceeds.

9.       In the interest of reaching an agreement with SCV and OBP on terms that would allow the bankruptcy estate to receive a benefit from a sale of the tangible assets in the warehouse, I entered into discussions with those parties on the terms of a possible sale and the manner in which the proceeds from the sale would divided among the parties.  I later authorized my legal counsel to enter into a *Stipulation Between The Trustee, Second Century Ventures, LLC And Oakesdale Business Park, LLC*, which is now on file with the Court.  Under the terms of that agreement, the parties have agreed that the bankruptcy estate will receive 30% of the net sale proceeds from a sale of the assets at the warehouse, free from the security interest that is claimed by SCV and free from the administrative rent claim held by OBP, and 20% of the net sale proceeds will be paid to OBP as compensation for that party's administrative rent claim, and 50% of the net sale proceeds shall be paid to SCV as compensation for that party's security interest in the assets at the warehouse,  Also, with respect to the accounts receivable in the amount of $22,466.81 that I have collected in this case, the agreement states that the bankruptcy estate shall be allowed to retain 50% of those accounts receivable free from any security interest that may be claimed by SCV, and the remaining 50% of those accounts receivable shall be paid to SCV as compensation for that party's security interest in the accounts receivable.  The agreement  also states that the warehouse space must be cleaned out by 6-30-22.  In my opinion, the only way to accomplish that goal is to complete a sale of all of the inventory and equipment that is currently situated in the warehouse.

10.       In my opinion, the agreement that I have reached with SCV and OBP is reasonable and is in the best interests of the bankruptcy estate, because that agreement is designed to allow the bankruptcy estate to receive a benefit from a sale of the debtor's inventory, etc., and without such an agreement I believe the bankruptcy estate would, most likely, not receive any benefit at all from those assets due to the secured claim that is held by SCV and the administrative rent claim that is held by OBP.  Consequently, I hereby recommend that such agreement should be approved by the Bankruptcy Court.

DECLARATION OF RONALD G. BROWN, TRUSTEE IN
SUPPORT OF HIS PROPOSED SALE OF ASSETS FREE
AND CLEAR OF LIENS AND OTHER INTERESTS, ETC.          -4-

DAVID A. GEBBEN,
ATTORNEY AT LAW
1700 SEVENTH AVENUE, SUITE 2100
SEATTLE, WA 98101
TELEPHONE: (206) 357-8456
FACSIMILE: (206) 357-8401

Case 22-10472-TWD    Doc 39    Filed 05/10/22    Ent. 05/10/22 12:05:53    Pg. 4 of 5

11.      I am also aware of a possible lien on two forklifts and three pallet racks that are situated in the warehouse that might be claimed by HYG Financial Services, Inc., or by Wells Fargo Financial Services, based on a UCC filing in the State of Washington under the debtor's prior legal name, SDN, Inc.  But that potential lien was not based on a filing under the debtor's legal name at the time of the Chapter 7 filing, Staging and Design Network, Inc., and was not based on a filing in the State of Delaware.  Due to questions about the validity and/or priority of that lien, I propose to include the aforementioned items in the sale, with any questions about the validity and/or priority of that lien to be determined by the Bankruptcy Court at a later date.

12.      In addition to the inventory, equipment, etc. that is presently being stored in the warehouse, there are also some records of the debtor company, and some miscellaneous office equipment and supplies, that do not hold any value for the estate to the best of my knowledge, and are actually burdensome to the estate because they are taking up space in the warehouse and the estate may be held responsible for the use of that space until the debtor's lease is rejected. With respect to the debtor's business records at the warehouse, it is my understanding that most of the debtor's business records were kept online and were not kept in a physical form.  In addition, I have had an opportunity to visit the warehouse and I have already removed the records that I believe will be necessary to the administration of this case.  Thus, I propose to abandon and dispose of any personal property in the warehouse that is determined by the auctioneer to hold no auction value for the estate.

DATED THIS 9th DAY OF MAY, 2022.

/s/ Ronald G. Brown
RONALD G. BROWN, TRUSTEE

DECLARATION OF RONALD G. BROWN, TRUSTEE IN
SUPPORT OF HIS PROPOSED SALE OF ASSETS FREE
AND CLEAR OF LIENS AND OTHER INTERESTS, ETC.          -5-

DAVID A. GEBBEN,
ATTORNEY AT LAW
1700 SEVENTH AVENUE, SUITE 2100
SEATTLE, WA 98101
TELEPHONE: (206) 357-8456
FACSIMILE: (206) 357-8401